*234
 
 Gaston, J.
 

 The plaintiff alleges in bi's bill that he and ~one Mabry Pettaway and the defendant had beconfe botind
 
 J J
 
 as joint sureties for one Asa E. Rhodes, on a note payable -to the President and Directors of the Bank of the United States, at their branch at Fajretteville in this State; that the said note had been renewed by payments of instalments made by the said Rhodes, until it was reduced to the sum of six hundred dollars, for which sum the last note was given; that this note became due on the fifth of May, 1833, and, not having been paid according to its tenor, the same was put in suit against all the parties thereto, judgment thereon obtained, and the said judgment and costs paid by the defendant and the-plaintiff, each contributing the sum of three hundred and fifty dollars and twenty-three cents.
 

 The bill further states that Rhodes became utterly insolvent and removed out of the State, that Pettaway died, John
 
 B.
 
 Thompson administered on his estate, and that said estate is entirely insolvent. It further charges that, on the 11th of Sept. 1833, Rhodes executed to the defendant a bill of sale for two negroes, Dinah and Clary, for the nominal consideration of five hundred and fifty dollars, and avers that, in truth, no consideration passed from the defendant to Rhodes, but that the deed was executed purely and solely to indemnify the said defendant from loss because of his liability as a surety for Rhodes; and the prayer of the bill is, that the plaintiff, who engaged in a common risk and has shared in a common loss with thedefendnnt, may be declared entitled to share with the defendant'in the benefit of said indemnity.
 

 • The' answer of the defendant admits that the plaintiff Mabry Pettaway and himself were the joint sureties of Rhodes in the accommodation obtained by the latter in the U. S. Bank, and the same was lessened by renewals on the note, whereupon judgment was obtained, and that the judgment was had and the same paid, as set forth in the plaintiff’s bill, but the defendant saith, that, when the said note Was given, he advanced to Rhodes, to enable him to pay the instalment then required, before a renewal could be had, the sum of two hundred and ten dollars: that when he advanced this sum he purchased the two negroes “ valued at g550,”
 
 *235
 
 for which sum he sold them in a few days thereafter to Lot Ballard, and that the plaintiff knew of this purchase and sale by the defendant, before he executed the last note as one
 
 of Rhodes’
 
 sureties; that he denies “the charge of never having given any consideration for said slaves, or that said
 
 slaves were worth more than he
 
 purchased and afterwards sold 'them for;” he further says that “ far from being more than indemnified by the purchase of the negroes in question, he has actually been a loser by Rhodes;” he denies the allegation “ that the bill of sale received from Rhodes was intended
 
 solely
 
 as an indemnity, but says that it was an absolute and
 
 bona fide
 
 biU of sale, made to carry into effect an absolute purchase,” and further says, that before and at tire time of said purchase Rhodes complained to him of false reports, which had been circulated to the injury of his credit, “ and offered to the defendant the slaves in question as a means of paying him for his advances.” The defendant states that Rhodes sent off several valuable slaves to Florida before he left the State, and has since died there, leaving', as defendant has been informed, considerable property, and that defendant not “having knowledge of the insolvency of Pettaway’s estate does not admit the same,”
 

 To this answer there was a general replication, and, proofs having been taken, the cause was transmitted here for hearing.
 

 Upon the proofs it appears that the parties have mistaken the date of the note, upon which they were sued. It bears date the 5th of October, 1833, is executed by Rhodes to Murrell the defendant, and endorsed by him, the plaintiff, and Pettaway; and is made payable at the office of discount and deposit of the Bank of the United States ninety days after date. Durant H. Rhodes, who was present at the close of the bargain between the defendant and his brother Asa Rhodes for the negroes Dinah and Clary, certifies,.that the defendant was to pay for them $550, and, in November following, paid in part therefor $210 — and that Asa Rhodes said that he intended to make Murrell safe, and wished to make Gregory (the plaintiff) safe. Anthony H. Rhodes, another witness to the transaction, states, that Asa Rhodes said
 
 *236
 
 he wanted the negroes to go to that debt, to save Murrell l°ss on acc0lint °f ib aad, if any thing remained, to go to the benefit of Gregory. Benjamin White testifies, that he ¡¡as heard Murrell say that Rhodes had sold him the negroes for $550, and after saving himself harmless, he had paid over .the residue of the price to Rhodes, and Ballard, who purchased the negroes from the defendant at the price of $550, (the very sum named in Rhodes’ bill of sale) declares, that he was informed by the defendant that they were placed in .his hands by Rhodes to save the defendant harmless on account of the surety note, and that if any surplus remained it was to be applied to the benefit of the plaintiff.
 

 Taking this testimony in connection with the studiously vague and disingenuous, answer of the defendant, we have not a doubt but that the slaves mentioned in the pleadings were conveyed to the defendant, if not wholly yet cer-taiuly in part, as an indemnity — and in that indemnity, whatever be its extent,'the plaintiff is entitled to share. When two engage in a common risk as sureties for a third, and one of them subsequently takes an indemnity from the principal debtor, it enures to the benefit of both.
 
 Fagan v Jackson,
 
 4 Dev. 263.
 

 It does not appear whether the $210, which Durant H. Rhodes proves was paid to Asa Rhodes, was or was not applied in renewal of a former note, on which all the parties were bound. Nor is it necessary for us now to determine how that fact is, as it is more properly a matter
 
 to he considered
 
 in taking an account. If it were so applied, then the amount of the indemnity, received by the defendant and in which the plaintiff is to share, that is the price of the slaves, will be diminished by that sum. If it were not so applied, then it will be a question, whether the entire price of the slaves will not be taken as the value of the indemnity. No objection has been raised to a decree, either in the pleadings or at the hearing, because of a defect of parties. Asa Rhodes having left the State and died abroad, no objection would lie because he or his representative is not a party defendant. Nor will we, of our own motion, refuse to do what seems just between the present parties, because the representative
 
 *237
 
 of Pettaway is not before us. Although the defendant states . that he does not “ know” that the estate of Pettaway is in-' .solvent and "therefore” does not admit it, we cannot well doubt but that the plaintiff and defendant both
 
 believe
 
 it to be insolvent. Under this belief, they have paid off the judgment equally between them, and neither has made any effort nor advanced any claim to get contribution to his loss out of that estate.
 

 The court declares that the defendant has received an indemnity from the common principal of the plaintiff and defendant, because of their common liability for such principal, in which the plaintiff is entitled to share, and directs a reference to ascertain the amount of the indemnity so received and the portions of the common loss respectively sustained.
 

 Per Curiam, Pecreed accordingly.